UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
NANOMEDICON, LLC.,

                          Plaintiff,                        CV 10-5094
                                                                               (Wexler, J.)

        -against-

THE RESEARCH FOUNDATION OF THE
STATE UNIVERSITY OF NEW YORK and
PELAGIA-IRENE GOUMA ,

                          Defendants.
------------------------------------------------------X
APPEARANCES:

Lucas & Mercanti, LLP
BY: PETER J. PHILLIPS, ESQ.
475 Park Ave South, 15th Floor
Suite 2300
New York, NY 10016
Attorneys for Plaintiff

Farrell Fritz, P.C.
BY: MICHAEL ALAN-HERMAN SCHOENBERG, ESQ.
1320 RXR Plaza
Uniondale, NY 11556
Attorneys for Plaintiff

Scully, Scott, Murphy & Presser
BY: PETER I. BERNSTEIN, ESQ.
400 Garden City Plaza, Suite 300
Garden City, NY 11530
Attorneys for Research Foundation of the State University of New York

Beldock Levine & Hoffman LLP
BY: CYNTHIA ROLLINGS, ESQ.
99 Park Avenue, 16th Floor
New York, NY 10016
Attorneys for Pelagia-Irene Gouma

1

WEXLER, District Judge

This case was commenced in New York State Court, and was thereafter removed. Presently before the court is Plaintiff's motion to remand. For the reasons set forth below, the motion is granted.

BACKGROUND

I. The Parties and Their Business Relationship

The facts set forth below are drawn from Plaintiff's allegations. In view of the fact that the existence of federal jurisdiction depends upon those allegations, they are recited here to make clear the basis for Plaintiff's claims. Such facts are accepted as true, only at this stage of the proceedings.

Plaintiff Nanomedicon, LLC ("Nanomedicon" or "Plaintiff") is a biotechnology company focused on the development of certain diagnostic devices. It is a limited liability company with its principle place of business in this district. Plaintiff's chief executive officer is Dr. Anastasia Rigas ("Dr. Rigas"). Named as Defendants are the Research Foundation of the State University of New York ("SUNY"), an entity that is asserted to oversee inventions discovered and developed by SUNY employees (the "Research Foundation"). Also named as a Defendant is an individual who is an employee of SUNY at Stony Brook, Dr. Pelagia-Irene Gouma ("Dr. Gouma"). Dr. Gouma is alleged to be the Director of the Center for Nanomaterials and Sensor Development in the Department of Materials Science and Engineering at SUNY Stony Brook.

In 2006, Dr. Gouma is alleged to have developed a sensor that is capable of sensing certain gases (the "Technology"). Dr. Gouma patented the Technology, as well as other related technologies. The Research Foundation is, as Dr. Gouma's employer, alleged to be the owner of

2

patent rights relating to four patents (the "Patents"). In 2007, the Research Foundation sought to license the rights under the Patents to Rigas and Nanomedicon's predecessor in interest.[1] On November 15, 2007, the Research Foundation entered into an "option and exclusive patent license agreement (the "Agreement") granting it the right, inter alia, to licenses arising under the Patents. It is the parties' rights and obligations under the Agreement that form the basis of Plaintiff's claims. Section 4.1(a) of the Agreement grants certain exclusive option rights to Nanomedicon. Paragraph 4.1(b) of the Agreement sets forth the time period in which such option rights may be exercised. That option period was extended by later amendments to the Agreement.

Nanomedicon began to exercise its option rights under the Agreement. It asserts that Dr. Gouma, as an inventor and employee of Stony Brook was obligated to assist Nanomedicon in the development of related technology. Nanomedicon asserts that the Agreement gave it the right to review any proposed publications, and to request that confidential or protected information be removed therefrom.

Plaintiff alleges that Dr. Gouma was unhappy with the Research Foundation's decision to enter into the Agreement. It is asserted that she therefore "embarked on a campaign of harassment aimed at both Rigas and the Foundation," aimed at "forcing Nanomedicon and the Foundation to renegotiate" the Agreement, to strip Nanomedicon of its exclusive rights.

On June 24, 2010, the Research Foundation gave Nanomedicon written notice of its intention to terminate the Agreement based upon various alleged defaults. Nanomedicon states

---

[1] While the court recognizes that the actual party to the Agreement was Nanomedicon's predecessor in interest, the court refers, for simplicity, to Nanomedicon or Plaintiff as the party to the Agreement.

3

that it cured those claimed defaults. Despite such alleged cure, the Research Foundation formally terminated the Agreement on September 7, 2010. Nanomedicon thereafter commenced this action in the Supreme Court of the State of New York, County of Suffolk.

II.     The Allegations of the Complaint

Nanomedicon's complaint sets forth six causes of action, all of which stem from the Agreement. In addition to alleging breach of the Agreement, and seeking a declaratory judgment and specific performance, the complaint alleges two causes of action upon which Defendants rely to confer federal subject matter jurisdiction. Those two causes of action, which are the only claims necessary to discuss in the context of this motion, are the fourth and sixth causes of action. The court details their allegations below.

The fourth cause of action, asserted against both Defendants, alleges breach of a 2006 confidentiality agreement that is related to the Agreement (the "Confidentiality Agreement"). Plaintiff alleges that the Confidentiality Agreement obligates the Research Foundation to maintain the confidentiality of information related to the Agreement. As a SUNY Stony Brook employee, Dr. Gouma is alleged to be bound by the Confidentiality Agreement. Dr. Gouma is alleged to have breached the Confidentiality Agreement by publication of allegedly confidential information in two scholarly articles. These publications are alleged to have deprived Nanomedicon of some or all of the patent and development rights obtained through the Agreement.

The sixth cause of action, which is asserted only against Dr. Gouma, alleges tortious interference with prospective economic advantage. It alleges that Dr. Gouma was aware of the business relationship between Plaintiff and the Research Foundation. Dr. Gouma is alleged to

have made "false and malicious statements about Rigas and Nanomedicon to the Research Foundation," and of "failing to cooperate in the development and testing" of required technologies. Dr. Gouma is alleged to have acted "solely out of malice and/or used improper or illegal means, in an effort to induce the Research Foundation to break its License Agreement with Nanomedicon." As to damages, the sixth cause of action alleges that Dr. Gouma's actions have interfered with Nanomedicon's ability to earn profits and royalties that it could have earned under the Agreement.

III. Defendants' Removal

On November 3, 2010, Defendants removed this matter, arguing that federal jurisdiction exists because this case arises under patent law. The notice of removal relies on the fourth and sixth causes of action as described above. As to the fourth cause of action, Defendants argue that patent jurisdiction exists because the damages that will flow from the alleged breach of confidentiality will deprive Nanomedicon of some or all of the patent and development rights obtained through the Agreement. According to the notice of removal, adjudication of this cause of action will necessarily involve a determination of the scope of Gouma's invention. The sixth cause of action, alleging tortious interference, is alleged to arise out of the patent law because allegations regarding Gouma's "false and malicious statements," and that she "acted solely out of malice and or used improper or illegal means," will necessarily involve a determination of patent rights, and the scope of inventions.

IV. The Motion to Remand

In support of the motion to remand, Plaintiff argues that this action alleges only state law claims and does not, as required for removal, arise under the patent law. After review of relevant

legal principles, the court will turn to the merits of the motion.

## DISCUSSION

I. <u>Legal Principles</u>

28 U.S.C. §1441 permits removal of any civil action, commenced in a state court, over which a federal court has original jurisdiction. 28 U.S.C. §1441(a); <u>Rivet v. Regions Bank of Louisiana</u>, 522 U.S. 470, 474-75 (1998); <u>Bounds v. Pine Belt Mental Health Care Resources</u>, 593 F.3d 209, 215 (2d Cir. 2010); <u>Ferreira v. New York Daily News</u>, 2009 WL 890577 *2 (E.D.N.Y. 2009). Where removal is based upon a claim arising under federal law, the action may be removed, without regard to the citizenship of the parties. 28 U.S.C. 1441(b).

When deciding whether a state law complaint alleges a federal cause of action, the court considers whether plaintiff's "well-pleaded complaint" contains an essential federal question. <u>Beneficial Nat'l. Bank v. Anderson</u>, 539 U.S. 1, 6 (2003); <u>Rivet</u>, 522 U.S. at 475; <u>Ferreira</u>, 2009 WL 890577 *2. The "mere presence" of a federal issue in a state cause of action is insufficient to confer federal jurisdiction. <u>Nuzzo v. Verizon New York, Inc.</u>, 2004 WL 1872708 *2 (S.D.N.Y. 2004), quoting, <u>City of Rome, New York v. Verizon Communications, Inc.</u>, 362 F.3d 168, 176 (2d Cir. 2004). Nor is federal jurisdiction created by reliance on a federal defense, or federal claims set forth in the removal petition. <u>Rivet</u>, 522 U.S. at 478; <u>City of New York v. Verizon New York, Inc.</u>, 331 F. Supp.2d 222, 225 (S.D.N.Y. 2004). Instead, the plaintiff is "master" of his complaint and may decline to raise "claims based upon federal law [and] choose to have the case heard in state court." <u>Nuzzo</u>, 2004 WL 1872708 * 2, quoting, <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 398-99 (1987). Therefore, even if a complaint can be construed to set forth both federal and state causes of action, it is the plaintiff's prerogative to pursue only his state claim,

and removal is not proper.

In the context of a motion to remand, the burden lies with the party seeking to sustain the removal as proper. See R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 655 (2d Cir. 1979); Marcus v. Quattrocchi, 715 F. Supp.2d 524, 530 (S.D.N.Y. 2010). Thus, the burden is on Defendants to show the propriety of removal.

II.  Patent Jurisdiction

Federal jurisdiction over patent matters is set forth in 28 U.S.C. §1338, which states, in pertinent part, that federal courts have original, exclusive jurisdiction over "any civil action arising under any Act of Congress relating to patents . . . . " 28 U.S.C. § 1338(a) ("Section 13381(a))." Like other statutes creating federal jurisdiction, Section 1338(a) jurisdiction covers "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Christianson v. Colt, 486 U.S. 800, 809 (1988); see In re Tamoxifen Citrate Antitrust Litigation, 466 F.3d 187, 199 (2d Cir. 2006); Obstfeld v. Schwartz, 621 F. Supp.2d 87, 94 (S.D.N.Y. 2008)(exercise of federal patent jurisdiction requires showing of a substantial question of federal law); Biosensory, Inc. v. Bedoukian, 2007 WL 2221165 *2 (D. Conn. 2007) (same).

As in other cases alleged to "arise under" federal laws, the issue of whether a claim "arises under" patent law is determined by what appears in plaintiff's complaint, unassisted by any anticipation or avoidance of defenses that might be interposed. Christianson, 486 U.S. at 809. The mention of patents in pleadings does not necessarily mean that the complaint raises a substantial issue of patent law. Obstfeld, 621 F. Supp.2d at 95. Thus, where patent law is not an

"essential element" of plaintiff's theory of recovery, those claims do not arise under patent law. In re Ciprofloxacin Hydrochloride Antitrust Litigation, 166 F. Supp.2d 740, 750-51 (E.D.N.Y. 2001). Additionally, where a state law claim may be supported by alternative theories, a single interpretation of that claim is insufficient to form the basis of federal jurisdiction. Instead, patent law must be "essential to each of those theories." Uroplasty, Inc. v. Adv. Uroscience, Inc., 239 F.3d 1277, 1279 (Fed. Cir. 2001).

The decision of the United States Supreme Court in Grable & Sons Metal Products, Inc., v. Darue Engineering & Manufacturing, 545 U.S. 308, 314 (2005), addresses the general issue of when a state law claim can be deemed to "arise under" federal law, so as to support the exercise of federal jurisdiction. There, the Court held that federal jurisdiction may be established where "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314. Whether or not Grable is interpreted as a "refinement" of the Christianson standard, the case is consistent with Christianson, holding that federal jurisdiction must be supported by "not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in federal law." Grable, 545 U.S. at 313 (emphasis added); see Laboratory Corp. of America Holdings v. Metabolite Laboratories, Inc., 599 F.3d 1277, 1282 (Fed. Cir. 2010).

III. Disposition of the Motion

Plaintiff's complaint sets forth no explicit cause of action relying upon patent law. Thus, the court has subject matter jurisdiction over this matter only if Defendants sustain their burden

8

to show that the claims arise under patent law, i.e., that resolution of the claims identified require the court to resolve an substantial issue of patent law. They do not. Indeed, Plaintiff's claims involve no necessary application of federal patent law – substantial or otherwise.

The fourth causes of action, as described above, alleges that Defendants have violated the Confidentiality Agreement. Whether or not such protected information was improperly disclosed does not require a court to determine any issue of patent construction or validity; it requires only that the court construe the scope of the parties' agreement as to what they considered to be confidential, and whether Defendants' conduct violated the parties' agreement. This does not implicate the patent laws, or in any way affect the validity of the patents that form the basis of the parties' agreements. This is especially true in light of the fact that Plaintiffs have made crystal clear their position that they do not, in any way, challenge the validity of any patent.

The court reaches the same conclusion with respect to the sixth cause of action. This claim, like the remainder of the complaint, alleges a purely state law cause of action. Plaintiff's claim that Dr. Gouma interfered with its prospective economic advantage, the details of which will either be proved or disproved during the course of the litigation, depends not at all upon the validity or construction of the patents. Instead, the claim depends upon the knowledge and conduct of Dr. Gouma. Such conduct can involve Dr. Gouma's failure to cooperate with the Research Foundation and/or the making of any variety of disparaging statements about Plaintiff to the Research Foundation. Such conduct might be relied upon to support Plaintiff's tortious interference claim, and in no way involves any issue of patent law.

For the foregoing reasons, the court holds that the complaint neither relies upon, nor raises any significant issue of patent law. Accordingly, the court lacks federal subject matter

9

jurisdiction, and the motion to remand must be granted. Accord American Tel. and Tel. Co. v. Integrated Network Corp., 972 F.2d 1321, 1324 (Fed. Cir. 1992) (patent jurisdiction held not to exist in case alleging only traditional contract and tort causes of action arising out of allegations regarding assignment of patents by employees and misuse of confidential information); Uroplasty, 239 F.3d at 1279-80 (no federal jurisdiction in case alleging, inter alia, breach of confidential information, even though such claims alleged improper disclosure involving patent application); Biosensory, 2007 WL 2221165 *2 (remanding to state court action alleging breach of contract and related claims on ground that allegations of sale of patented products did not raise issue of patent law); Wham-O Mfg. Co. v. All-American Yo-Yo Corp., 377 F. Supp. 993, 994-95 (E.D.N.Y. 1973) (remand to state court ordered where case involved breach of agreement relating to sale and manufacture of items, and not validity of patent covering such items).

## CONCLUSION

For the foregoing reasons, the motion to remand is granted. The Clerk of the Court is directed to terminate the motion, return the file in this matter to the Supreme Court of the State of New York, County of Suffolk, and to close the file in this case.

SO ORDERED

/s/ LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
May 9, 2011